UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-667-H

JEJUANA GATES                                                                                    PLAINTIFF

V.

JOHN E. POTTER, POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE, et al.                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jejuana Gates, has filed a *pro se* complaint alleging racial discrimination and unlawful retaliation against Defendant, the United States Postal Service. Defendant immediately moved to dismiss on the grounds that the complaint fails to state facts which support such claims. After carefully reviewing the complaint, the Court concludes that Plaintiff's claims cannot succeed as alleged.

I.

The facts stated most favorable to Plaintiff are as follows.

Since May 14, 2005, the United States Postal Service employed Plaintiff as a part-time flexible mail handler at its Distribution Center in Louisville, Kentucky. During this time, Plaintiff reported to the Supervisor of Distribution Operations, James Sirmons, who is African American. Sirmons reported to Philodendron Green, who is also African American. She in turn reported to Plant Manager, Roger Nichols, who is Caucasian.

The Postal Service organizes its work in "tours." A "tour" is synonymous with work shift. Tour 3, for instance, is the night shift. Until June, 2006, Plaintiff worked on tour 3. In

June of 2006, Plaintiff requested a swap from tour 3 to tour 1, which amounted to similar work for the same pay at a different time. Tour 1 management included Kenneth Ford, who is Caucasian, and Parris Hampton, who is African American. Hampton received the request, checked Plaintiff's attendance record, and found a large number of unexcused absences and other attendance problems. Furthermore, no tour 1 employee was willing to make such a swap at that time, and Ford's main objective was to maintain the same number of employees on each tour. For all these reasons, according to Ford, he denied Plaintiff's request. Nichols was not included in any part of Plaintiff's request and subsequent denial of a swap.

Plaintiff says that Jessica Carragher was a similarly situated employee. Carrragher, a part time mail handler who is Caucasian, approached Nichols on July 27, 2006 and "tearfully" requested a swap from tour 3 to tour 1 because of hardships at home. Without consulting Ford or Hampton (the tour 1 managers who had denied Plaintiff's request), or looking at the attendance record of Ms. Carragher, Nichols exercised his authority and approved Ms. Carragher's request to move from tour 3 to tour 1. In the fall of 2006, Plaintiff did transfer to tour 1 by submitting a bid to become a full-time regular.

Plaintiff first filed a formal EEO complaint on August 2, 2006, regarding the denial of her request to change tours. The overtime list for the Columbus Day holiday was generated in September, and Plaintiff was marked absent on Columbus Day, October 9, 2006, when she did not show up for work. In October 2006, Green was made Manager of Distribution Operations in the area where the Plaintiff worked. Green had not previously worked with Plaintiff. On October 3, 2006, Plaintiff submitted a Form 3971 for 24 hours of paid military leave during the weekend of October 20-22, 2006. Plaintiff provided no other documentation, and had not

submitted her orders for the year, as is necessary under the Postal Service Policy requirements. On October 18, 2006, Green denied Plaintiff's request with the memo: "No documentation Provide- refusal to bring in." Plaintiff states that she never refused to bring the documents in, she just had not done so at the time of her request for paid military leave.

At the time which Green asked for more documentation, Green and Sirmons were unaware of the Plaintiff's EEO complaint about tour change request. Plaintiff was placed on "leave without pay" status. Later, she produced a document showing her completion of military service, hoping that she would be put on military leave "with pay." Because this document looked suspicious, Green made a call to the Platoon Sergeant to verify it. While this was occurring, Supervisor David Noonkester "put through the change of pay to Paid Military Leave" and on October 24, Plaintiff received pay for the three days in question.

The 2006 Columbus Day holiday occurred Monday, October 9, 2006. Plaintiff says someone incorrectly added her initials to the overtime list. She makes no allegation as to who may have done this. Nevertheless, Plaintiff brought the mistake to Ms. Green's attention, who responded forcefully with "You will work!" Plaintiff alleges that she was "disciplined" for bringing up the forged initials. However, her complaint is unclear as to the precise disciplinary action taken. Though Plaintiff was marked AHOL (Absence from Holiday Leave) as a result of her failure to come to work on the Columbus Day holiday, such a sanction does not constitute a discipline (or an adverse action) under Postal Service regulations.

## II.

To establish a *prima facie* case of racial discrimination, Plaintiff must show that she is (1) a member of a protected group; (2) subject to an adverse employment decision; (3) qualified for

the position; and (4) was replaced by a person outside the protected class. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court can resolve Plaintiff's discrimination by determining whether Plaintiff has suffered an adverse employment action when she was denied her request to switch from tour 3 to tour 1.

Generally, an adverse action is defined as a materially adverse change in terms and conditions of employment. The Sixth Circuit has held that "only 'ultimate employment decisions' such as hires, firings, promotions, and demotions can be materially adverse." *Hollins v. Atl. Co.,* 188 F.3d 652, 662 (6th Circuit 1999). A tour change (or in this case, the denial of a request for a tour change) does not qualify as a demotion. Nor does it result in lower pay or materially significant changes in work. Though the schedule change may be very desirable to Plaintiff, it does not amount to an adverse employment action. Regardless, to change an employee's work schedule, falls far short of an adverse action under Sixth Circuit cases.

Neither can Plaintiff show she was treated differently than a similarly situated person. Plaintiff says that Carragher was a similarly situated employee who was granted her request to switch tours. It is not clear that Plaintiff and Carragher are similarly situated. The tour 1 managers, Ford and Hampton, who denied Plaintiff's request were in no way involved in Carragher's request to switch tours. Carragher's request was granted by Nichols, who held the authority to grant such requests on the spot, without looking into attendance or checking with particular tour managers. Because different managers dealt with the requests, Plaintiff and Carragher are not similarly situated. Plaintiff has not claimed any other adverse actions and has established no economic or other damage as a result of her being denied the opportunity to switch tours.

For all these reasons, Plaintiff has not established a *prima facie* case of racial discrimination.

### III.

To establish a *prima facie* case of retaliation, Plaintiff must show that she engaged in (1) a protected activity; (2) the exercise of protected rights was known to defendant; (3) defendant thereafter took an adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Plaintiff did engage in a protected activity by filing a complaint on August 2, 2006, with the EEO office about her change of tours claim. However, Green, the alleged retaliator, was probably not aware of Plaintiff's EEO complaint. She did not begin working with Plaintiff until after the complaint was filed, and no evidence suggests that anyone told Green about the complaint. This is only the first of several obstacles which would appear to bar Plaintiff's retaliation claim.

Once again, Plaintiff must establish that Defendant took an adverse employment action against her. Adverse action, in the context of retaliation, means "that a reasonable employee would have found the challenged action materially adverse." *Id.* at 68. (2008 WL 4737493 (W.D.Ky.)) "Retaliatory harassment by a supervisor does not, in and of itself, constitute a tangible employment action." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). The supervisor's action must be "'severe or pervasive' as to alter the conditions of the victim's employment and create an abusive working environment." *Id.*; *see Jackson v. Quanex*, 191 F.3d 647, 658 (6th Cir. 1999).

Plaintiff says that someone forged her initials on the Columbus Day Overtime list. She

5

makes no allegations as to who committed the forgery. Because her initials were in fact on the list, Green required Plaintiff to work on Columbus Day. She would be allowed to file a grievance at a later time. This one time event was a standard procedure of the company, and therefore cannot be recognized as "severe or pervasive." Nor did it alter the conditions of Plaintiff's employment or create an abusive work environment. As such, neither the forged initials nor the Plaintiff being required to work on Columbus Day constitute an adverse action.

Plaintiff also claims that Green retaliated by denying her request for paid military leave on October 18, 2006. Green says that she did so on the basis that Plaintiff had not properly submitted documentation for the paid military leave. Green, again, followed standard procedure for military leave requests. More important, the evidence shows that Green was unaware of Plaintiff's EEO activity. Therefore, there is no reason to believe that the denial of paid military leave had any connection to Plaintiff's EEO activity. Moreover, Plaintiff eventually received her original request of paid military leave. For all these reasons, Plaintiff cannot establish a *prima facie* case for retaliation.

Perhaps Plaintiff has some work place complaints that she may pursue within the normal workplace procedures. However, federal courts and the discrimination laws it enforces are designed to deal with complaints which concern materially adverse actions, not everyday nuisances, misunderstandings, mistakes or poor behavior of the type described here. Consequently, Plaintiff's complaints do not reach the threshold required to assert valid federal discrimination claims.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is

SUSTAINED and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record